UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD H. FERRIS, JR.,

    Plaintiff,

v.                                                 Case No. 1:09-cv-357
                                                 Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                          /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on March 29, 1972 and completed a GED (AR 97, 106).[1] He alleged a disability onset date of March 17, 2002 (AR 97). Plaintiff had previous employment as a landscaper, tree trimmer, painter, maintenance worker and cook (AR 101, 116). Plaintiff identified his disabling conditions as a hip and pelvic fracture and a head injury (AR 100). On July 23, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits through December 31, 2002, plaintiff's date last insured (AR 16-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date of March 17, 2002 through his date last insured of December 31, 2002 (AR 18). At step two, the ALJ found that prior to the date

last insured, plaintiff suffered from the severe impairments of post left hip fracture and attention deficit hyperactivity disorder (ADHD), and a "non-severe mood disorder" (AR 19). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 20).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that he is able to lift and carry 10 pounds frequently and 20 pounds occasionally. He can push and pull only occasionally. He requires the opportunity to alternate sitting and standing every 15 minutes and requires an assistive device for extended walking. He can occasionally climb ladders, ropes, scaffolds and stairs. He is able to frequently balance and occasionally stoop, kneel, crouch and crawl. He should avoid hazards such as machinery and heights.

(AR 20). The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 21). At the fifth step, the ALJ determined that through at least the date last insured, plaintiff could perform a significant number of jobs in the national economy (AR 22). Specifically, plaintiff could perform 4,900 jobs in the regional economy involving sedentary work: production assembly worker (2,400 jobs); inspector/sorter (700 jobs); machine operator/tender (1,300 jobs); and hand packager (500 jobs) (AR 22). Accordingly, the ALJ determined that plaintiff was not under a disability at any time from March 17, 2002, the alleged onset date, through December 31, 2002, the date last insured (AR 23).

### III. ANALYSIS

Plaintiff has raised one issue on appeal:

**The Commissioner failed to consider significant non-exertional limitations.**

Plaintiff suffered severe injuries on March 17, 2002, when he fell approximately two stories while trimming a tree (AR 184, 207). Plaintiff's injuries included a rib fracture, skull fracture, liver injury, deep venous thrombosis, fracture of the sacrum and coccyx and a left acetabular fracture (AR 187, 197, 207, 215). The ALJ concluded that these injuries limited plaintiff to performing sedentary work. Plaintiff contends that because the ALJ focused on his physical injuries, he did not consider "significant non-exertional impairments." Plaintiff's Brief at p. 1. Plaintiff asserts that these impairments include diagnoses of ADHD, depression, a mood disorder and post-traumatic stress disorder (PTSD); IQ scores falling within the low average range (i.e., full scale IQ score of 86 and verbal IQ score of 83); and a Global Assessment of Functioning (GAF) score of 42. *Id.* at p. 2. Plaintiff contends that the ALJ committed legal error because he failed to consider these intellectual and psychological impairments. *Id.*[2]

When an ALJ evaluates the severity of a claimant's mental impairment, the written decision must include findings based upon the "special technique" as set forth in 20 C.F.R. § 404.1520a. The special technique involves rating the claimant's degree of functional limitation, determining the severity of the mental impairments, and documenting the application of the technique. 20 C.F.R. § 404.1520a(b) - (e). Under the special technique, the ALJ rates the claimant's degree of limitation in three functional areas (activities of daily living, social functioning and

---

[2] The brief filed by plaintiff's attorney consists of only two pages. *See* docket no. 11. The brief relies on opinions expressed in an examination performed in May 2005 and the results of an IQ test administered in September 2005. *Id.* Both of these evaluations occurred more than two years after plaintiff's last insured date of December 31, 2002. Under these circumstances, the court would be justified in dismissing this appeal for failure to file an adequate brief. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones"). Nevertheless, I recommend the court address the merits of plaintiff's claim, i.e., that the ALJ failed to consider his significant non-exertional limitations.

concentration, persistence and pace) and then enumerates episodes of decompensation. *See Id.* at § 404.1520a(c)(3). The degree of limitation in the functional areas is determined based on a five point scale of: none, mild, moderate, marked and extreme. *Id.* at § 404.1520a(c)(4).

In utilizing the special technique pursuant to § 404.1520a, the ALJ reviewed plaintiff's reported history of depression and ADHD, as well as his symptoms arising from the 2002 head injury (AR 19-20). The ALJ made the following observations regarding plaintiff's daily activities, social functioning and ability to concentrate:

> The claimant goes to church regularly and talks to his pastor. He has many friends that come over to see him, especially his brother. He enjoys being around his children and doing things with them, including watching movies. He also enjoys putting model cars together, playing cards (Exhibit 19F) [AR 393-98], and working on his 1937 Ford. Seven months after the accident, he was running a program at a local gymnasium [f]or little kids, sponsored by the church (Exhibit 14F) [AR 343]. In 2006, he worked on model cars and airplanes and did cleaning and rebuilding of small engines (Exhibit 41F/2)[AR 930].

(AR 19).

After reviewing the record, the ALJ concluded that plaintiff's mental impairments did not impose significant functional limitations on his ability to work:

> The claimant's mental impairments, evaluated under medical listing 12.04 for affective disorders (20 CFR, Part 404, Subpart P, Appendix 1), have not imposed significant limitations on the claimant's ability to work and are not severe within the meaning of the applicable regulations. The claimant has no limitations of activities of daily living, or of ability to maintain social functioning. He has mildly impaired concentration, persistence or pace. There have been no episodes of extended decompensation. He does not have a disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause decompensation. He does not have a history of one or more years' inability to function outside of a highly supportive living arrangement.

(AR 19).

The ALJ gave little weight to the opinion of a non-examining DDS consultant, Mark Garner, Ph. D., who determined that plaintiff had moderate limitations in his ability to concentrate (AR 20, 439). Rather, the ALJ relied on the evaluation of an examining neuropsychologist, Jacobus D. Donders, Ph.D., who evaluated plaintiff in September 2006 (AR 929). Dr. Donders reported that the psychological tests revealed "a number of indications of unmistakable symptom magnification on some of the cognitive tests" (AR 931). For example, the doctor observed that plaintiff's performance on a "verbal list-learning task" was not significantly different from chance, noting that he had seen individuals with severe traumatic brain injury (i.e., a prolonged coma) and individuals with moderately severe Alzheimer's Disease "do significantly better" than plaintiff (AR 931-32). The doctor concluded that the results of the neuropsychological tests were "confounded strongly" by plaintiff's inconsistent effort and intermittent symptom magnification (AR 932). Because the test results were "largely invalidated by the patient," Dr. Donders could not advocate any specific treatment (AR 932). The ALJ determined that Dr. Donders' finding of inconsistent effort and symptom magnification "conclusively establishes the claimant was malingering and exaggerating his alleged psychological symptoms" (AR 20).

The diagnosis of PTSD and the GAF score of 42 appear in an April 28, 2005 consultative examination performed by Lynn McAndrews, Ph.D. (AR 393-98). The ALJ observed that Dr. McAndrews' examination noted some cognitive difficulties at that time, but the doctor "found it difficult to determine whether these would be present without the effects of medications" (AR 19). In this regard, Dr. McAndrews also observed that plaintiff admitted being addicted to

7

medications and that "some of his symptoms are difficult to sort out due to his current medications" (AR 398).[3]

        The ALJ subsequently reviewed plaintiff's medication and drug abuse:

> The claimant has a longstanding ongoing history of marijuana abuse per his admission and by urine test results (Exhibit 35F/6, 97) [AR 489, 580]. He tested positive for cocaine in 2004 and denied knowingly using it (Exhibit 35F/97) [AR 580]. The record reflects a long history of abuse of prescribed narcotics, Oxycontin and Methadone, along with drug-seeking behavior (Exhibit 35F/112, 119, 136, 142, 152, 171) [AR 595, 602, 619, 625, 635, 654]. He has bought Oxycontin on the street (Exhibit 35F/52) [AR 535]to supplement his prescriptions. In 2004, his primary doctor was ready to discharge as a patient due to escalating consumption of narcotics (Exhibit 35F/86) [AR 569]. The record reflects concerns that he was [sic] possibly sold Oxycontin (Exhibit 38F/77) [AR 823]. The record confirms severe doubts about the claimant's credibility (Exhibit 35F/182, 41F/4) [AR 665, 932].

(AR 21).

        Plaintiff presents no argument with respect to a disability arising from his IQ tests, other than to state that tests taken in September 2005 indicated verbal and full scale IQ scores of 83 and 86, respectively, and that these scores fell within the low average range. Plaintiff's Brief at p. 2. Plaintiff did not refer to his performance IQ score of 91, which fell within the average range (AR 421). The psychiatric review technique form completed by Dr. Garner (covering plaintiff's condition from March 1, 2002 through September 19, 2005) did not identify plaintiff as meeting the criteria for mental retardation under Listing 12.05, 20 C.F.R. Pt. 404, Subpt. P., App. 1 (AR 433). Accordingly, there was no basis for the ALJ to address the issue of plaintiff's IQ scores, other than

---

[3] On September 21, 2004, plaintiff's treating physician, Albert C. Brown, M.D., noted "I am just about ready to drop this patient from my practice due to his narcotics abuse" (AR 569).

to observe that the scores placed plaintiff within the low average range of cognitive functioning (AR 19).[4]

Finally, plaintiff cites no authority for his claim that the GAF score of 42 assigned in April 2005 is "generally considered to be inconsistent with gainful employment." Plaintiff's Brief at 2. A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

The GAF score of 42 assigned to plaintiff lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* Contrary to plaintiff's claim, a determination of disability cannot be based solely

---

[4] The court notes that plaintiff apparently provided incorrect information to the examiner conducting the IQ test, stating that he had only a "9th grade education" (AR 420). This statement contradicts plaintiff's disability report and his testimony at the administrative hearing that he earned a GED in 1994 (AR 106, 941), as well as his statement to Dr. McAndrews that he quit school in the 11th grade (AR 394). Such inconsistencies support the ALJ's "severe doubts about the claimant's credibility" (AR 21).

on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). GAF scores "are not raw medical data." *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007). "Furthermore, the Commissioner has declined to endorse the GAF score for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Id.* (internal quotation marks and brackets omitted). Accordingly, the ALJ was not bound to adopt the GAF score assigned to plaintiff in April 2005 as either raw medical data or as the basis for establishing disability under the Social Security Act.

The record reflects that the ALJ considered plaintiff's non-exertional impairments and determined that these impairments did not affect his residual functional capacity. While plaintiff disagrees with that determination, the ALJ did not commit the alleged legal error of failing to consider his significant non-exertional limitations.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  May 28, 2010                              /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).